Davis *v.* Talcott.

---

## DAVIS & CLARK *vs.* TALCOTT & CANFIELD.

14b 611
27ap 26

Where a former recovery is insisted on as a bar to an action, and neither the defendant's answer nor the record of the former judgment show that the matters in controversy in the second suit were litigated in the first, but merely that the same matters *might have been litigated,* the burthen lies on the defendant to show that they were there litigated.

It is therefore unnecessary for the plaintiff to prove that the matter in controversy was not litigated in the former suit, but was withdrawn from the consideration of the referee, and did not pass into judgment.

It is competent, however, for the plaintiff to show, by parol, that a subject which it appears by the record *might* have been litigated, was not in fact litigated, in the former suit.

Where a written contract omits to specify the time within which it is to be performed, proof of a subsequent parol agreement between the parties, fixing the time of execution or performance of the written contract, is admissible.

In an action to recover damages for the defective execution of a contract to construct and put up machinery in a flouring mill, in a well finished workmanlike manner, and of sufficient size and strength to correspond with the cylinders, the proper measure of damages is the difference between the value of the machinery actually put up and that agreed to be constructed. Marvin, J. dissenting.

In such an action the plaintiff is entitled to recover, in case the jury find that the machinery was not properly constructed, such sum as will be sufficient to put the same in the condition contemplated by the contract; also such sum as the mill would have earned during the time it was necessarily de-

layed in consequence of the breakage or defects in the machinery; taking the fair ordinary earnings of the mill, after deducting from the gross earnings the expenses of running the same, as the net profits. MARVIN, J. dissenting.

So, in case the contract is not performed *in a reasonable time*, the jury are to ascertain how long performance was unreasonably delayed, and then if they find the plaintiff was in a condition to work his mill, by having grain to grind, and is prevented from grinding the same, by such unreasonable delay, the plaintiff is entitled to damages to the gross amount of the earnings of the mill, after deducting the expenses of running the same. MARVIN, J. dissenting.

When a person undertakes to erect a building, or put a mill, or machinery in operation, he ought to be holden to indemnify the other party against the loss of the use of the building, mill or machinery, after the expiration of the time for performing the contract. And in case it was defectively made, he should indemnify the party for the loss of the use of the property during the time necessarily spent in repairing it and putting it in order.

The defendants had agreed to construct and put up certain machinery, for the plaintiffs, in their flouring mill. When the machinery was in readiness to be put up, the plaintiffs objected to it as insufficient; whereupon, the defendants, in consideration that the plaintiffs would allow them to put the machinery into the mill, promised and agreed that they would pay to the plaintiffs all damages, losses, injury and expenses which they should suffer or incur by reason of the insufficiency of the machinery. Upon that promise the plaintiffs permitted the defendants to put up such machinery. *Held*, that this was a valid contract, upon a good consideration, to indemnify the plaintiffs in respect to any loss of profits arising from the defects in the machinery. MARVIN, J. dissenting.

THIS action was brought to recover damages for breach of a contract entered into between the plaintiffs and defendants, by which the defendants agreed with the plaintiffs to take the cylinders then used by the plaintiffs at their mills at Youngstown, and lay them down on new cast iron frames, furnishing all new connections, flywheel, with a good and sufficient copper flue heater with all eccentrics, &c. and to put the same in a well finished workmanlike manner, of sufficient strength and size to correspond with said cylinder; to furnish cast iron pipes from the exhaust to the heater and also from the engines to the boiler, including the throttle valve, all of which should be heavy and calculated to do heavy work, and to hitch up the same upon the foundations prepared by the plaintiffs; to furnish at their own expense a

Davis v. Talcott.

good and sufficient engineer, who should make the connections of the pipes and put the separate parts of the engine and fixtures together in working order, and to furnish the driving shafts of the engine; all of which should be connected by the defendants. The fixtures and connections to refer to the engineer department exclusively. The plaintiffs were to pay all expenses of transportation and getting the heavy parts upon the foundation, and to pay the defendants nine hundred dollars, one half on the shipment of the machinery, and the balance on the first of October thereafter, with interest.

The plaintiffs alledged in their complaint that it was stipulated and agreed that the 20th of May was a reasonable time for completing said work, but the work was not completed till the 20th of June thereafter. That by reason of such neglect and delay of the defendants, the plaintiffs sustained great loss and damage, viz: that they were deprived during that time of the use of the mill, and lost the gains and profits which they would have made by manufacturing flour; and that they employed and hired men to work in and run said mill in the manufacturing of flour, to commence on the 20th of May, whose wages the plaintiffs were obliged to pay.

The plaintiffs also alledged that on or about the 20th of June, the defendants offered and proposed to the plaintiffs to put into said mill certain machinery which the defendants then had, but which the plaintiffs averred was not of sufficient strength or size to correspond with said cylinders, nor heavy, nor calculated to do heavy work, but was too light, slender and insufficient, and was not made or finished in a workmanlike manner, and was worth five hundred dollars less than the machinery described and contemplated by said contract. The plaintiffs declined to accept or receive the same, upon the grounds above stated, and so informed the defendants. Whereupon the defendants promised and agreed that if the plaintiffs would permit them to put such machinery into said mill, as and for the machinery contemplated by said contract, *the defendants would pay to the plaintiffs all damages* which the plaintiffs should sustain, suffer, or incur by reason of the insufficiency of said machinery or any

part thereof, and did in consideration of being permitted to go on and put the same into said mill, then and there guaranty and warrant to the said plaintiffs that said machinery would prove to be sufficient, and would answer the requirement, and do the work mentioned in said contract, to the amount of two hundred barrels of flour a day; which the plaintiffs averred was but a reasonable amount for said mill. In consideration of such warranty, the plaintiffs suffered the defendants to put said machinery into said mill, and the plaintiffs incurred expenses, &c. That the defendants put in said machinery, and that the same proved insufficient, &c. and failed, broke and gave out. The plaintiffs requested the defendants to alter such machinery and render the same of the capacity required by said agreement, which the defendants neglected and refused to do. That the plaintiffs were obliged at their own cost and expense to provide and put in suitable, proper and sufficient machinery, instead of that so put in by the defendants, and used due diligence in providing and putting in the same, and that the time necessarily occupied therein was sixty days. That the plaintiffs sustained, by means of the premises, great damage, loss, injury and expense in this, viz. in the costs and expenses of providing and putting in such suitable, proper and sufficient machinery as aforesaid; in the loss of the use of the mill for the space of sixty days, occasioned by the breaking of the machinery so put in by the defendants, and required for the putting in such suitable, proper and sufficient machinery as aforesaid, and the loss of the gains and profits which the plaintiffs would have made during that time in the manufacture of flour; and the loss of the wages of men unoccupied during the time.

Previous to the commencement of this action, an action had been brought by the defendants against the plaintiffs, for the recovery of the contract price for putting in the machinery, in which action the plaintiffs set up in their answer, by way of recoupment, the same damages, claims and demands for the recovery of which this action was brought. Such action was referred to S. B. Ludlow, as sole referee, to hear, try and determine the same; who heard the proofs and allegations of the parties, and made a

report in favor of the defendants in this action against the plaintiffs herein, for $564,84. The pleadings and proceedings in such action were set up in the defendants' answer in this action as a bar to the plaintiffs' right to recover herein. To that part of the answer the plaintiffs replied, that upon the trial, and before the entry of the judgment referred to in said answer, the plaintiffs withdrew the matter set up in the complaint in this action, and that the same did not, nor did any part thereof, pass into or form a part of said judgment.

After the counsel for the plaintiffs had opened the case, on the trial of this action, the counsel for the defendants raised the point that as it appeared from the pleadings, the trial and judgment in the former action between the same parties were a conclusive bar to the plaintiffs' right to recover in this action. The court decided that it was not a conclusive bar, and that the defendants in the prior action had a right at any time before that cause was submitted, to withdraw the matter which they sought in their answer to recoup, and bring a separate action for the recovery of such damages. To which ruling and exception the defendants' counsel excepted. The counsel for the defendants then read in evidence the judgment roll in said action. The counsel for the plaintiffs then offered to read in evidence a statement or affidavit made by Charles Rhodes, taken pursuant to a stipulation which was read, showing that the matters now in controversy were not considered in the former suit. The counsel for the defendants objected to such statement being read, and to each part thereof, on the ground that it, or some part of it, would impeach the judgment roll which had just been read in evidence; which objection was overruled by the court, and the defendants' counsel excepted. The counsel for the defendants also insisted that the defendants in the prior suit had no right to withdraw their defense at the time and in the manner it was proposed to show they had done it on the trial before the referee, and objected to the testimony as improper, for that reason. The court overruled the objection, and decided to admit the evidence; to which decision the counsel for the defendants excepted. The paper was then read in evidence; from which it appeared that the matters

referred to were withdrawn from the consideration of the referee, on the hearing before him, and no evidence was given in relation to them. The plaintiffs gave evidence tending to show that the defendants had failed to fulfill their contract within a reasonable time, and that the machinery furnished, or some part thereof, was deficient in strength, in construction and workmanship, and not such as was required by the terms of the contract; and after the contract was proved, the counsel for the plaintiffs offered to prove by Ira Westcott, that after the contract was made and signed, it was agreed in conversation between the parties that the work contracted for should be completed by the 20th of May thereafter. The counsel for the defendants objected to the testimony, on the ground of want of consideration. The court decided that it was admissible, for the purpose of showing that as between the parties it was regarded a reasonable time for doing the work. To which decision the counsel for the defendants excepted, and the evidence was received and given.

The same witness testified that he was and had been for 10 or 12 years a millwright; that he thought he was acquainted with the cost and nature of such machinery; had been in business 10 or 12 years building mills; had built a good many mills, both as a millwright and engineer so far as relates to setting up engines; had built probably a dozen mills; had acted as engineer in setting up engines; was acquainted with their value, and had dealt in them. The witness was asked by the plaintiffs' counsel the question "What in your opinion is the difference in value between the machinery put in by the defendants in this case and machinery well finished, in a workmanlike manner, of sufficient strength and size to correspond with the cylinders, machinery heavy and calculated to do heavy work?" The counsel for the defendants objected to the testimony as irrelevant, and also that it did not appear that the witness was an expert or machinist, or sufficiently acquainted with the nature of such machinery to make his opinion proper evidence in the cause. The court overruled the objection and admitted the evidence, and decided that the witness was competent to answer the question, and the counsel for the defendants excepted. The witness testified

Davis *v.* Talcott.

that six or seven weeks was a reasonable time to manufacture and put up the machinery, and that when the machinery came on the plaintiffs objected to it as insufficient and not according to contract; whereupon the defendants said if the plaintiffs would allow it to be put in they would warrant it to be sufficient and capable of grinding 200 barrels a day, or all the mill would grind. The witness also testified that the difference in value between the machinery put in and that described in the question was about $400.

The plaintiffs' counsel offered evidence tending to show the expense of running the mill per day, and the delay occasioned by the breaking of the machinery, and claimed as part of their damages the expenses sustained during the time required to re-pair such breaches. The counsel for the defendants objected to the evidence proposed, but the court decided to admit the same, and the defendants' counsel excepted. The witness testified in regard to the time so lost, and the value thereof.

The counsel for the plaintiffs, for the purpose of showing damages sustained by them by the loss of the use of the mill during the time alledged to have been lost by non-performance of contract and delay by breaking, asked the question, "How many barrels of flour would such a mill work per day?" The counsel for the defendants objected to the question as irrelevant and improper. The court overruled the objection, and the defendants' counsel excepted. The counsel for the plaintiffs proposed testimony tending to show that they had wheat on hand during the time of such delay. This was objected to as irrelevant, and the objection overruled and the defendants' counsel excepted. Evidence was given on the subjects proposed; and after the evidence was closed, the court charged the jury among other things as follows: "That the plaintiffs were entitled to recover, if the jury should find that such machinery was not properly constructed—1. Such sum as would be sufficient to put the machinery in such condition as was contemplated by the contract. 2. Such sum as the mill would have earned during the time it was necessarily delayed in consequence of the break-age or defects in the machinery; and in connection with this the

Davis v. Talcott.

jury were to take the fair ordinary earnings of the mill after deducting the expense of running the same, from the gross earnings, thereby arriving at the net profits. That in case the contract was not performed in a reasonable time, the jury were to ascertain what length of time it was unreasonably delayed, and then if they should find the plaintiffs were in condition to work their mill, by having stock to grind, and were prevented from grinding the same by such unreasonable delay, the plaintiffs were entitled to damages to the gross amount of the earnings of said mill, after deducting the expenses of running the same. To which charge the defendants' counsel excepted. He further charged, that the former action between the same parties was no bar to this action, in case the recoupment set up in the answer in that action was withdrawn before the referee. That the defendant in such action had a right to withdraw. And if the jury believed the statement of Mr. Rhodes, they must find it was so withdrawn. To which charge the defendants' counsel excepted. He farther charged, that the defendants were bound by the contract to bore out the cylinders, in case it was necessary that it should be done. To which the defendants' counsel excepted. The counsel for the defendants requested the court to charge the jury, 1. That said former judgment was conclusive evidence that the same matters had been adjudicated, and that the plaintiffs could not therefore recover. 2. That said record was conclusive evidence that the defendants had performed their contract. 3. That the parol evidence was inadmissible to explain away said judgment. 4. That if the parol evidence was to be taken into consideration by the jury, it showed nothing to destroy the effect of the record; but on the contrary, by the admission of the plaintiffs the defendants had performed the contract on their part. 5. That the offsets made by the plaintiffs in the first action, and allowed by the referee, showed that the same matters, or some of them, were litigated and passed upon in that suit, and therefore the judgment in that action was a bar to this. 6. That if the plaintiffs were entitled to recover any thing in this action, it was only for the difference between the value of the machinery as made and set up, and the machinery and work as it should

have been if made and done strictly according to the contract; and any immediate damages in consequence of unreasonable delay, if any, in the performance of the contract. 7. That the plaintiffs were not entitled to recover damages for the temporary loss of the use or profits of their mill, or for the time their workmen might have been out of employ. The judge refused to charge the jury upon each of the foregoing points, except as he had already charged; to which refusal the defendants' counsel excepted.

*S. Caverno*, for the plaintiffs.

*N. Dayton*, for the defendants.

TAGGART, P. J. The questions arising in this case may be reduced to four separate propositions only. *First.* Do the former judgment and proceedings between the same parties constitute a bar to this action? *Second.* Was it competent for the plaintiffs to prove the conversation between the parties which took place after the written contract was made, as to the time within which the contract was to be completely performed, for the purpose of showing, as between the parties, what was regarded as a reasonable time? *Third.* Whether the questions put to the witness Westcott, as to difference in value, was competent? *Fourth.* Were the decisions of the court, as to the measure of damages, right?

*First.* In the case of *Campbell* v. *Butts*, (3 *Comst.* 173,) the court say, " The rule is well established, if not elementary, that a party insisting upon a former recovery must show that the record of the former suit includes the matter alledged to have been determined. This is true in all cases in courts of record, whether the pleadings between the parties in the previous suit are general or special in their character. It follows that when a declaration, as in the first suit between these parties, states a special matter as the ground of action, and issue is taken by the defendant upon the allegation, parol proof is inadmissible to show that a different subject was litigated upon the trial. For this would be to contradict the record which shows the issue, and

verdict and judgment upon that issue, to the exclusion of all other matter whatsoever."

In the case of *Young* v. *Rummell*, (2 *Hill*, 478,) the court say, "The judgment is only evidence, by way of bar, when the same matter was directly in question in the former suit. The record must show that the same matters might have come in question on the former trial, and then the fact that it did come in question, may be shown by proof *aliunde*." In the case of *Doty* v. *Brown*, (4 *Comst*. 71,) the plaintiff withdrew part of the claim set up in the declaration. The court, speaking on this subject, in the opinion delivered, say, "In the action before the justice, brought by *Brown* v. *Doty*, Brown declared for and at first claimed to recover for all the goods levied on. This claim of course embraced the goods which are the subject of the present controversy. But discovering that Doty had done no act amounting to a conversion of the goods now in question, he withdrew his claim to recover for them and proceeded only for the value of the goods which Doty had sold or otherwise converted. The former judgment therefore stands on the same footing as if the goods now in controversy had not been included in the declaration in the first suit." Parol evidence is admissible to show what was actually in controversy between the parties. (*Doty* v. *Brown*, 4 *Comst*. 75. *Wood* v. *Jackson*, 8 *Wend*. 9. *Gardner* v. *Buckbee*, 3 *Cowen*, 120.)

In this case the record only shows that the same matters in controversy might have been litigated. If I have a correct appreciation of the case, neither the defendants' answer nor the record of the former action shows that the same matters were litigated. The most that they show is that the same matters might have been litigated. If so, the burden lay upon the defendants, to show the contrary. This they failed to do; it was therefore unnecessary for the plaintiffs to prove what they have proved, viz. that the matter in controversy was not litigated, but was withdrawn from the consideration of the referee, and did not pass into judgment.

If, however, I am wrong in this view of the case, yet there is nothing in this case which conflicts with the opinion of the court

Davis v. Talcott.

of appeals in the case of *Campbell* v. *Butts.*   Parol proof was not
admitted here to show that a different subject was litigated upon
the trial.   It was admitted merely to show that a subject which
it appeared by the record *might have been* litigated *was not
litigated.*   Had the plaintiffs shown that a subject matter not
contained in these pleadings, *was litigated,* they would have
come in conflict with the case of *Campbell* v. *Butts.*   This they
have not done, and are not in conflict with that opinion, but. the
ruling in this case is sustained by the uniform decisions of the
supreme court, and especially by the cases above cited.

   *Second.*   Was it competent for the plaintiffs to prove by West-
cott the conversation between the parties that took place after
the written contract was made, as to the time the contract was
to be completed, for the purpose of showing as between the
parties, what was regarded as a reasonable time?   "It is a
question for the jury as to what is a reasonable time, and we
have seen that parol evidence is admissible to show the circum-
stances and situation of the parties at the time of making the
contract, for the purpose of determining what is a reasonable time."
(*Chitty on Cont.* 730, *note s. Id.* 108.   *Ellis* v. *Thompson,*
3 *M. & W.* 445, 446.)   Stipulations and agreements subsequent
to the execution of the contract are not within the rule by which
parol evidence is excluded; hence the time of performance of a
simple contract in writing may be extended by a subsequent
parol agreement between the parties.   (1 *Cowen & Hill's Notes,*
*n.* 301, *p.* 610.)   It matters not how soon after the execution of
the written contract the parol one was made; if it was in fact
subsequent, and is altogether unobjectionable, it may be proved
and enforced.   (*Id.* and *Brewster* v. *Countryman,* 12 *Wend.*
446.   *LaFarge* v. *Rickert,* 5 *Id.* 187.)   The defendants can-
not object that the parol agreement was cotemporaneous with
the written one, because that will contradict the bill of excep-
tions, which states it to be afterwards.

   Now if it is competent to prove a subsequent contract varying
the place or time of delivery, it must be competent to prove a
subsequent parol contract fixing the time of execution or per-
formance of the written contract which merely omitted the time

within which it was to be performed.    That does not, as in the for-
mer case, create a different contract, but merely supplies an omis-
sion.    It cannot be objected that this agreement was without con-
sideration, because it is as much for the interest of the defendants
as the plaintiffs to have the time of performance definitely fixed.
Perhaps a reasonable time might have expired before the 20th
of May ; the defendants were interested in having it extended to
that time.    It amounts therefore only to a mutual agreement ;
the promise on the one part being a consideration for the prom-
ise on the other.    At all events, the plaintiffs were entitled to
the evidence, as an admission of the defendants as to what a rea-
sonable time would be.

*Third.* Was the question to the witness Westcott proper,
viz. "what in your opinion is the difference in value between the
machinery put in by the defendants in this case and the machinery
well finished, in a workmanlike manner, of sufficient strength
and size to correspond with the cylinders ; machinery heavy
and calculated to do heavy work ?" · The defendants object to
this question on the ground that the evidence was irrelevant, and
also that it did not appear that the witness was an expert or
machinist, or sufficiently acquainted with the value of such ma-
chinery to make his opinion proper evidence in this cause.  '

As to the first ground of the objection, a full and conclusive
answer will be found in the cases of *Cary* v. *Gruman,* (4 *Hill,*
625,) and *Voorhees* v. *Earl,* (2 *Id.* 288.)    The last ground is
fully answered by the bill of exceptions itself.    By the testi-
mony it appears that the witness was an expert, a machinist, and
sufficiently acquainted with the value of such machinery to make
his opinion proper evidence.

*Fourth.* The court decided and instructed the jury that the
plaintiffs were entitled to recover, if the jury should find that
the machinery was not properly constructed, (1.) Such sum as
would be sufficient to put the machinery in such condition as
was contemplated by the contract ; (2.) Such sum as the mill
would have earned during the time it was necessarily delayed
in consequence of the breakage or defects in the machinery.
That the jury were to take the fair ordinary earnings of the

Davis *v.* Talcott.

mill, after deducting the expenses of running the same from the gross earnings, thereby arriving at the net profits. So, in case the contract was not performed in a reasonable time, the jury wer to ascertain what length of time it was unreasonably delayed, and then if they should find the plaintiffs were in a condition to work their mill by having stock to grind, and were prevented from grinding the same, by such unreasonable delay, the plaintiffs are entitled to damages to the gross amount of the earnings of said mill, after deducting the expenses of running the same.

The defendants rely chiefly upon the case of *Blanchard* v. *Ely*, (21 *Wend.* 342,) to sustain them upon this point. That case was as follows : In September, 1834, a contract was entered into between the parties, by which the plaintiff agreed to build for the defendant a steamboat, intended to ply on the Susquehannah river, between Owego and Wilkesbarre, to be completed by the first of May, 1835, for which the plaintiff was to be paid the sum of $12,500. The boat, although not entirely completed, proceeded down the river about the 7th of May, being accepted on condition that what remained to be done should be done, but which was not done till some time in July. On her return to Owego she broke her shafts, which were repaired at the expense of the plaintiffs. This delayed her *four days*, and after she again started for Owego she was delayed *sixteen days* more by reason of the lowness of the water. On her second trip she again broke her shafts, and the defendants at their own expense procured a new set from New-York, which cost about $700. The defendants, after they took possession of the boat, enlarged her wheels and made other alterations, and proved that the guards were too low, and the expense of altering them would cost $250. Several witnesses for the defendant proved the iron of the shafts to be bad ; in this, however, they were contradicted by the plaintiff's witnesses. It was proved that a trip between Owego and Wilkesbarre could be performed in four days, at a net profit of $100 per trip, and that the river between these places was navigable only four months in a year. The judge instructed the jury that they should deduct from the amount otherwise due to the plaintiff, such sum as would be equal to

the expenses necessarily incurred by the defendant in remedying such *defects as existed* in the boat or its machinery; but they were not authorized to take into consideration the delay of the boat or loss of trips, or loss of profits, consequent upon any defect in the boat or machinery in reducing the amount of the plaintiff's recovery; the damages sustained by the defendant, from those causes, being too remote and consequential to be allowed in that action, and the remedy of the defendants for any injury sustained from these causes being by action against the plaintiff. The jury found a verdict for the plaintiff for the whole sum except about $100. The judge, in giving the opinion of the court, discusses the question of damages at considerable length, sustaining substantially the ruling of the judge at circuit, but concludes by granting a new trial, on another ground. The whole case is therefore *obiter*, and not an adjudication upon the question of damages. The learned judge, in delivering his opinion, says, " Yet in all the cases mentioned, as in that of insurance, there is no doubt that by an express contract on good consideration, the vendor may stipulate expressly to indemnify in respect to loss of profits arising from the defect against which he contracts." It may be observed, too, that the judge cites no authority on this particular question, and on that subject says, " No common law authority was cited at bar one way or the other, having any direct application to the measure of damages in such a case as this; nor am I aware that any exists."

The case of *Masterton* v. *Mayor of Brooklyn*, (7 *Hill*, 61,) was an action to recover damages against the vendee for refusing to accept marble contracted to be delivered by the plaintiff to the defendant. Chief Justice Nelson, who delivered the opinion of the court, after commenting on the rule that certain gains and anticipated profits are not recoverable as profits, says, " But profits or advantages which are the direct and immediate fruits of the contract entered into between the parties, stand upon a different footing. These are part and parcel of the contract itself, entering into and constituting a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfillment of any

Davis *v.* Talcott.

other stipulation. They are presumed to have been taken into consideration and deliberated upon before the contract was made, and formed perhaps the only inducement to the arrangement. The parties may indeed have entertained different opinions concerning the advantages of the bargain; each supposing and believing that he had the best of it; but this is mere matter of judgment, going to the formation of the contract, for which each has shown himself willing to take the responsibility, and must therefore abide the hazard. Such being the relative position of the contracting parties, it is difficult to comprehend why in case one party has deprived the other of the gains or profits of the contract by refusing to perform it, this loss should not constitute a proper item in estimating the damages. To separate it from the general loss would seem to be doing violence to the intention and understanding of the parties, and severing the contract itself. The civil law writers plainly include the loss of profits in cases like the present, within the damages to which the complaining party is entitled. They hold that he is to be indemnified for the loss which the nonperformance of the obligation has occasioned him, and for the gain of which it has deprived him. And upon looking into the common law authorities bearing upon the question, especially the later ones, they will be found to come nearly if not quite up to the rule of the civil law."

Mr. Justice Beardsley, in the same case says, "I think the plaintiffs are entitled to recover the amount they would have realized as profits had they been allowed fully to execute this contract. The defendants are not to gain by their wrongful act, nor is that to deprive the plaintiffs of the advantages they had secured by the contract, and which would have resulted to them from its performance." Again, "Remote and contingent damages, depending upon the result of successive schemes or investments are never allowed, for the violation of any contract. But profits to be made and earned by the faithful execution of a fair contract are not of this description. A right to damages equivalent to such profits results directly and immediately from the act of the party who prevents the contract from being performed."

It is true the above case is not upon the precise question un-

der consideration in this, but it explicitly establishes the doctrine that anticipated gains or profits do constitute a proper element in the allowance of damages.

In the case of *Dewint* v. *Wiltse*, (9 *Wend*. 325,) the plaintiff let to the defendant a ferry establishment at a place called Long Wharf, for the term of ten years, at the annual rent of $300; the defendant covenanting to keep and maintain such ferry in good order during the term, supplied with steam ferry boats, and other boats sufficient for the accommodation of travelers. The defendant discontinued the ferry, removing it to another place, by means of which a house belonging to the plaintiff was so much injured and impaired in its ordinary business and custom that the plaintiff was unable to let the house at any rent; whereas he had before been able to rent it for $300. The plaintiff recovered his damages by reason of the loss of such rent. A new trial was asked for, on account of such recovery, and denied by the court, who held that the damages proved were a legitimate claim, and the legal and natural consequences of the breach of the covenant.

In the case of *Freeman* v. *Clute*, (3 *Barb. S. C. Rep.* 424,) the defendants agreed to make and put up for the plaintiffs a steam engine of ten horse power, with a suitable boiler, to be ready for use by the first of September thereafter. There was a delay of three months beyond the time stipulated, in putting up the engine and boiler. The engine and boiler were also defective, and there was another delay of three months in efforts on the part of the defendants to remedy the defects. In that case the learned justice said, "I cannot agree with the counsel for the plaintiff that the estimated profits upon the manufacture of a specified quantity of flaxseed into linseed oil constitute a legitimate item of damages against the defendants. Such profits are entirely too speculative and uncertain to make them a measure of damages." The learned justice, after a full examination of the case of *Blanchard* v. *Ely*, and many other cases, concludes as follows: "The conclusion at which I have arrived, after a careful examination of the facts in this case and the authorities bearing upon the question involved, and the principles governing

Davis *v.* Talcott.

the rule of damages in similar cases, is that the plaintiff is enti-
tled to recover in addition to the sum paid by him on account of
the machinery, which now amounts with interest to about $700,
the further sum of $700 for the expenses incurred and damages
sustained by him in consequence of the failure of the defendants
to finish the machinery according to their contract.    The amount
thus allowed embraces the *loss of the use of the plaintiff's mill
and other machinery*, the fuel consumed, the delay of his work-
men employed for the purpose of carrying on his business, *and
the interest* on the amount expended in purchasing stock for
the mill."

The case of *Freeman* v. *Clute* fully sustains the ruling in
this action.    If the plaintiff was entitled to recover in that
case for the *loss of the use of the mill and machinery*, for the
three months' delay between the time of the performance of
the contract and the time it was in fact performed, and for the
further three months consumed in efforts on the part of the de-
fendants to remedy the defects, the plaintiffs in this cause are
surely entitled to recover the ordinary earnings of the mill
during like periods.    In other words, what the mill would have
earned in grinding for hire at the ordinary reasonable price per
barrel, or what the rent of the mill would have been worth for
the same period.    The charge does not authorize the recovery of
speculative damages, or what the plaintiffs might have made from
purchasing wheat and flouring and selling it at an advance.
Such profits are not the gains and profits contemplated.    The
judge in that case decided that the anticipated profits from
making flaxseed into oil could not be recovered ; that they were
entirely too speculative and uncertain to make them a measure
of damages.    The plaintiff in that case was permitted to recover
for the loss of the use of the mill and machinery.    The plaintiffs
in this case only recovered for the loss of the use of the mill and
machinery.  I think, upon that case, as well as on  principle, the
ruling at the circuit was correct.    It is most unjust to compel
the owner of a mill or other machinery to lose the entire use of
his mill or machinery during the time defective machinery is

undergoing repairs, and be permitted to recover barely the cost of putting it in the condition the contract required it to be put.

When a contractor undertakes to perform a contract to erect a building, or put a mill or other machinery in operation, he ought to be holden to indemnify the other party against the loss of the use of the building, mill or other machinery, after the expiration of the time for performance of the contract. And in case it was defectively made, he should indemnify the party for the loss of the use of the property for the time necessarily required to repair it and put it in order.

If, however, I am wrong in this view of the case as a general rule, yet the peculiar and definite character of this agreement will take it out of that rule. The defendants had their engine in readiness to put in. It was objected to as insufficient, as in fact it was. The defendants, in consideration that the plaintiffs would allow them to put their machinery into the mill, promised and agreed that they would pay to the plaintiffs all damages, losses, injury and expenses which they should suffer or incur by reason of the insufficiency of the machinery. Upon that consideration the plaintiffs did allow the defendants to put in such machinery, and it was put in accordingly.

This is, in the language of the learned justice in *Blanchard* v. *Ely*, " a contract on good consideration, by which the vendor stipulated expressly to indemnify the vendee in respect to the loss of profits arising from the defect against which he contracts."

A new trial must therefore be denied.

HOYT, J. concurred.

MARVIN, J. dissented on the question of damages.

New trial denied.

[NIAGARA GENERAL TERM, February 7, 1853. *Taggart, Marvin* and *Hoyt,* Justices.]