GRIFFIN *vs.* COLVER and others.

In an action for the recovery of the stipulated price for building a steam engine, boilers, &c., the defendants cannot recoup the gains and profits which would have arisen from the use of the engine, &c., had the same been delivered at the time agreed, and which gains and profits the defendants have been prevented from receiving, by the failure of the plaintiff to perform his contract within the time.

In such a case the defendants are entitled to recoup the loss of the value of the use of their machinery, &c., but not the profits of running it, in their ordinary business.

The gains and profits recoverable are those only which are the direct and immediate fruits of the contract, expressly stipulated for, or contemplated, by the parties.

APPEAL, by the defendants, from a judgment entered upon the report of a referee. The action was brought to recover the value of a steam engine, boilers, &c. sold and delivered by the plaintiff to the defendants, in pursuance of a written agreement between the parties. The complaint averred the full performance of the agreement, by the plaintiff, and the delivery to the defendants of the engine, &c. within the stipulated time, and the failure of the defendants to pay for the same. The answer set up various defenses ; among which was this : that the engine and machinery were not completed, nor ready for delivery, within the time agreed ; whereby the defendants, for the space of one month and a half, lost the use of the boilers, engine and machinery mentioned in the agreement, and also lost the use of their two planing machines, five saws and other machinery in their mill and lumber yard in Oswego, which said planing machines, saws and other machinery said engine was intended to drive, and of which the plaintiff had notice, at the time of making the agreement.

The cause was tried before a referee, who found the following facts : That in the spring of 1851, the plaintiff sold and delivered, and set running, to and for the defendants, a steam engine, boilers and other machinery, for the price of $3000, as alleged in the first cause of action in the plaintiff's complaint, and that the defendants were indebted to him therefor, except as thereinafter stated. That the defendants paid the plaintiff in notes,

money, goods, &c., and in money paid for plaintiff, in all the sum of $2081.27. That the plaintiff failed to deliver the said engine, boilers and other machinery, all by the first day of March, 1852, by reason of which the defendants sustained damages to the amount of $66.12. And he found, as a matter of law, that the defendants were entitled to be allowed to them in this cause the two sums last above mentioned, amounting to the sum of $2147.39. And that the defendants were indebted to the plaintiff for such engine, boilers and machinery, over and above all discounts, set-offs, recoupments and counter-claims, in a balance (including interest) of $918.65; for which sum, with costs, judgment was entered.

The principal question discussed on the hearing before the referee was, what was the correct rule of damages for not delivering the engine within the time specified in the contract. Several witnesses on the part of the defendants testified that the net average value of the use of the machine, at the place where it was located for the purpose for which it was intended, and had been used in connection with the machinery it then drove, was $50 per day, above the wear and tear and the expense of running it, so that in sixty days the use would pay the price which the defendants were to give for the machine, $3000. Upon cross-examination, these witnesses were inquired of how they made their estimation. They stated the quantity of lumber the machines driven by this engine would plane and cut per day, the price the defendants charged for planing, and deducted the expense of running and the wear and tear. The referee held that this was clearly an estimate of the *profits*, and nothing else, which was inadmissible as a rule of damages, in such cases.

*Talcott & Churchill*, for the appellants.

*A. & D. Coats*, for the respondent.

*By the Court*, HUBBARD, J. I think, upon well settled authority, the defendants are not entitled to recoup the loss of the gains and profits which they anticipated to realize, by the

use of their machinery. They were, doubtless, upon the finding of the referee and the principle of his decision, entitled to recoup the loss of the value of the use of their machinery, &c., but not the profits of running it in their ordinary business.

It is perhaps difficult to state the precise measure of damages to which they were entitled, growing out of the breach of the plaintiff's covenant. The referee allowed interest on the value of the defendants' investment in machinery, &c. while it remained unoccupied. This may not give a full indemnity in this respect, nor perhaps could ample compensation be made, short of going into speculative profits in the general business of the defendants, which the law will not allow, because of its great uncertainty, depending upon so many contingencies, and the success, it may be, of entirely collateral enterprises.

In a case like this, ordinarily, interest, together with damages for the delay of workmen, incidental expenses, &c. would present as safe and remunerative a rule, as could well be adopted. Another criterion might be adopted, which I think would be equally safe and entirely just. It is, in respect to the defendants' mill, machinery, &c., to allow the value of the rent or use and occupation for the time, unoccupied. But no evidence was given by which to determine the value of the rent, and hence the referee could not adopt that measure of damages. The rule which he did adopt was, however, sound, and the only one which could have been adopted upon the evidence.

The general rule of damages applicable to executory contracts, for breaches, is well stated in the case of *Freeman* v. *Clute*, (3 *Barb.* 424.) "It is a general rule that the party complaining of a breach of an executory contract is entitled to indemnity for the loss which the non-performance of the obligation by the other party has occasioned, and of the gain of which it has deprived him. But the gain contemplated by this rule is only that which is the direct and immediate fruit of the contract." In that case the defendant agreed to make and prepare for the plaintiff a steam engine of ten horse-power, with a suitable boiler. There was a delay of three months, beyond the time stipulated, in putting them up. They were found to be

defective, and further delay was occasioned. The learned justice, in deciding the case, says : " I cannot agree with the counsel for the plaintiff that the estimated profits upon the manufacture of a specific quantity of flax seed into linseed oil, constitutes a legitimate item of damages against the defendants. Such profits are entirely too speculative and uncertain to make them a measure of damages." That case in its facts is quite analogous to the one at bar. The engine was intended to propel the plaintiff's machinery in his oil mill. Damages were allowed for the use of the mill and machinery, fuel consumed, delay of workmen, and interest on the amount expended in purchasing stock for the mill. Upon what principle the value of the use of the mill and machinery was ascertained does not appear, but probably it was estimated by computing interest on the investment, by way of rent. The case, however, decides this point, that the anticipated gains and profits from the use of the engine in the plaintiff's oil mill in his general business were not allowable. The measure of damages for the breach of an executory contract, which Pothier states as the rule of the civil law, has been adopted, and may be regarded as the settled law of this state. He says : " In general the parties are deemed to have contemplated only the damages, and interest, which the creditor might suffer from the non-performance of the obligation in respect to the particular thing which is the object of it, and not such as may have been incidentally occasioned thereby, in respect to his other affairs ; the debtor is therefore not answerable for them, but only for such as are suffered with respect to the thing which is the obligation." (1 *Evans' Poth.* 91.) This rule is cited with approbation in *Masterton* v. *The Mayor &c. of Brooklyn*, (7 *Hill*, 61.) The gains and profits recoverable are those only which are the direct and immediate fruits of the contract, expressly stipulated for, or contemplated by the parties. The contract in *Masterton* v. *The Mayor &c.*, was for the delivery of marble hewn in a certain manner, so as to be fitted for use in building. The defendants refused to receive all the marble stipulated for, and the action was brought to recover damages upon the contract, for a breach of covenant. The

Griffin *v.* Colver.

plaintiff was allowed to recover the profits which he would have made had he been permitted to fulfill his contract. This was in analogy to that class of cases where a party is allowed to recover the profits of a good bargain in the purchase of a chattel which the other party refuses to deliver. He is allowed to recover the market value over and above the agreed price, as the legitimate fruit of his contract.

The case of *Blanchard* v. *Ely*, (21 *Wend.* 342,) it seems to me, is decisive of the case at bar. The head note, which is sustained by the case, is as follows : " In an action for the recovery of the stipulated price for the building of a steamboat, the plaintiff is entitled to recover the full amount, without any deduction by way of recoupment of damages to the defendant in consequence of loss sustained by him for the loss of trips, and the profits resulting therefrom, occasioned by defects in the boat or its machinery. The defendant in such case is, however, entitled to an allowance for moneys necessarily expended by him in supplying defects in the vessel or its machinery, &c. The courts of common law seem inclined to adopt the rule of the civil law in respect to damages for breach of contract relating to personal property, which is, that the party entitled to claim performance may claim damages for the non-performance in respect to the particular thing, the object of the contract ; but not such as may have been accidentally occasioned thereby in respect to his other affairs, &c."

In the case at bar, the use of the defendant's machinery, &c. may, upon the question of damages, be regarded as the object of the contract and within the legal contemplation of the parties, but certainly not the gains and profits of the general business of the defendants connected with that machinery. Such profits are no more allowable than the loss of trips and the profits therefrom, of the running of the steamboat, in *Blanchard* v. *Ely*.

The case of *Davis* v. *Talcott*, (14 *Barb.* 611,) seems to sustain the defendants in claiming the damages which they sought to recoup on the trial. That case was similar to this in its

facts. The action was to recover damages for the defective exe-
cution of a contract to construct and put up machinery in a
flouring mill. It was held that the plaintiff was entitled to re-
cover, as one item of damage, " such sum as the mill would
have earned during the time it was necessarily delayed in con-
sequence of the breaking or defect in the machinery; taking
the ordinary earnings of the mill, after deducting from the gross
earnings the expenses of running the same, as the net profits."
This decision was made by a divided court, one member dissent-
ing, and having examined the authorities cited, I think they do
not warrant the decision made. I have already referred to most
of them. The case of *Dewint* v. *Wiltse*, (9 *Wendell*, 325,)
cited as authority, establishes a liberal rule of damages. It is
to be observed that the opinion of the court is not published;
the reporter's note is simply given, with a brief statement of
facts. The grounds of the decision are not stated. It may be
that the loss of the rent of the tavern, store, &c. was a subject
of damage expressly stipulated for in the contract of the parties,
or it may have been recovered on the ground suggested by Jus-
tice Cowen in *Blanchard* v. *Ely*, (*supra.*) He says : " The case
of *Dewint* v. *Wiltse* must, I think, have been regarded by this
court as a *fraudulent breach* of a covenant to keep a ferry in
repair, which materially benefited the plaintiff's tavern." It
may be questionable whether even a fraudulent breach could
enhance the damages beyond those which are the subject of the
contract itself and directly arising from it. However that may
be, or whatever may have been the ground of the decision in
*Dewint* v. *Wiltse*, I think it should not be held authority to
allow the recovery of damages beyond those connected with the
particular thing which is the object of the contract. I cannot
therefore concur in the decision of *Davis* v. *Talcott.*

It follows that the defendants were not entitled to recoup the
loss of their anticipated profits in running their planing mills
and machinery. These profits are not immediately and neces-
sarily connected with the object of the contract. They are but
the result or consequence of the derangement and cessation of

the defendants' general business; too speculative, uncertain and remote to be the subject of legal damage.

The judgment and report of the referee must therefore be affirmed.

[Oneida General Term, January 1, 1855.   *Hubbard, Pratt* and *Bacon,* Justices.]