(27 App. Div. 22.)

### EPPENS, SMITH & WIEMANN CO. v. LITTLEJOHN et al.

(Supreme Court, Appellate Division, First Department. March 11, 1898.)

1. SALES—DELIVERY—REASONABLE TIME—BURDEN OF PROOF.
    In an action on an executory contract for the sale of merchandise, no time for delivery being set by the parties, the seller must allege and prove a delivery, or offer to deliver, within a reasonable time.

2. SAME—SHIFTING OF BURDEN.
    In an action by the seller on an executory contract for the sale of merchandise, no time for delivery being set, plaintiff's burden of proving a delivery within a reasonable time does not shift by defendant's setting up want of performance within a reasonable time.

3. SAME—WHAT CONSTITUTES REASONABLE TIME—EVIDENCE.
    A buyer at New York contracted for some coffee at Padang, Sumatra, date of delivery not set, the buyer knowing the difficulties of transportation, and that it could not be procured at once. An order for the coffee, of even date, sent by the seller, could not reach Sumatra until over a month later. It was very difficult to charter vessels, and witnesses' opinions of reasonable time to procure transportation after the order reached Padang varied from 30 to 90 days and from four months to a year. The seller's agent at Padang made other shipments, but failed to get transportation for this, and it was not delivered until 13 months after the contract was made. 'Held, that the question of performance of the contract in a reasonable time was for the jury.

4. SAME—CONSTRUCTION OF CONTRACT—MODE OF DELIVERY.
    A contract for the sale of coffee to be shipped from Padang, Sumatra, provided, as to shipment: "One thousand piculs picked Corinchie coffee (marks, numbers, and names of vessel or vessels to be given as soon as known, and before the arrival of the coffee), to arrive and to be shipped        per sailing vessel called the       , from Padang, bound for New York." 'Held, that the contract contemplated shipment in different ships.

5. SAME—MODIFICATION OF CONTRACT—EVIDENCE.
    A seller contracted on February 8, 1893. to deliver at New York, within a reasonable time, coffee to be shipped from Padang, Sumatra. In March the seller applied through his broker for a change of route of shipment, and the buyers testified that during the negotiations they granted an "extension," as they put it, of time of shipment to June 30th. A letter was produced, written by them, and mailed the seller, and which the buyers said was shown to his broker, and in which they assented to this extension. The broker did not deny the extension, but said he did not recall it or the letter. Held. that the evidence was sufficient to go to the jury on the question of modification of the contract.

6. BROKERS—AUTHORITY—EVIDENCE.
    A broker who, after making a sale of merchandise for his principal, to be shipped from Sumatra to New York within a reasonable time, applied to the seller to modify the route of shipment, and during the negotiation agreed to an extension of time of delivery to a certain date. The president of the seller company swore that the broker was the company's broker when this negotiation took place, but there was no evidence of express authority to agree to the extension. Held sufficient to show the broker's authority to agree to the extension.

**7. SALES—DELAY IN DELIVERY—WAIVER.**

Under a contract by which seller was to ship goods by June 30th from Padang, Sumatra, for New York, the name of the vessel on which seller shipped goods was, about August 16th, communicated to buyers, and there was no response. On December 27th the marks and numbers of the goods were communicated to the buyers, when they repudiated the contract for delay. *Held*, that the failure to respond to the August notice was not a waiver of the delay.

**8. SAME—EVIDENCE—COMPETENCY—EFFECT.**

On a question in regard to delay between seller and buyers in the delivery of goods shipped from Padang, Sumatra, to New York, a letter was written, during the delay complained of, by the president of the seller company in New York, having charge of the transaction, to the seller's agent in Sumatra, in which the statement was made that the delay was unreasonable. *Held*, that ignorance of the difficulties the agent in Sumatra may have had in procuring a ship did not render the letter incompetent, but related only to its effect.

Van Brunt, P. J., dissenting.

Appeal from trial term, New York county.

Action by the Eppens, Smith & Wiemann Company against Lomax Littlejohn and another. From a judgment for defendants, and an order denying a new trial, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, McLAUGHLIN, and INGRAHAM, JJ.

G. A. Strong, for appellant.

F. G. Dow, for respondents.

PATTERSON, J. This is an appeal from a judgment in favor of the defendants entered upon a verdict of a jury, and from an order denying the plaintiff's motion for a new trial. The action was brought to recover damages for the alleged breach of a contract for the sale of merchandise, such breach consisting in the refusal of the defendants to accept delivery of the merchandise, the subject of the contract. Special facts are set forth in the complaint, showing that the damages have been liquidated, if any are recoverable; the question of liability being left open. The complaint contains allegations of the making of the contract, tender of the goods in alleged performance of that contract, and the refusal of the defendants to accept the merchandise. It appears that at the city of New York, and on February 8, 1893, the plaintiff corporation and the defendants entered into a contract for the sale by the former and the purchase by the latter of a thousand piculs of Corinchie coffee, then, as the proof showed, stored at Padang, in Sumatra. The contract was signed for the plaintiff by its broker, T. W. Lewis, and was "accepted" by the defendants, who signed their firm name thereto. The material part of that contract is in these words:

"Standard Contract.

"Expected mark,
" 'E. S. & W.'
" 'M'                 New York, Feby. 8, 1893.

"Sold for account of M. Eppens, Smith and Wiemann Co., to Mess. Littlejohn & Parsons. The sound and made sound portion of about (1,000) one thousand piculs picked Corinchie coffee (marks, numbers, and name of vessel or vessels to be given as soon as known, and before the arrival of the coffee), to arrive

and to be shipped        per sailing vessel called the        , from Padang, bound · for New York, at (27½) twenty-seven and half cents, gold, per pound, basis of four months' notes, bill to date when the coffee is all in store."

The blank spaces were in the contract as signed. It was shown that upon its being signed an order was forwarded to the agent of the plaintiff at Padang, but nothing was done in performance of the contract or any of its terms until August, 1893, when the plaintiff informed the defendants that the merchandise would come forward by a vessel called the Susanne. That vessel sailed from Padang in November, 1893. In December, 1893, the plaintiff communicated to the defendants the numbers and marks of the packages. The Susanne arrived with the goods on board in March, 1894, some 13 months after the contract was made. Upon a tender of the merchandise, the defendants refused to accept it. The substantial defenses made are that the goods were not shipped within a reasonable time, and that in March, 1893, the contract was modified by requiring the shipment to be made from Sumatra not later than the 30th of June, 1893. Upon the trial of the cause the plaintiff proved the making of the contract, the giving of information of the name of the vessel and the marks and numbers of the packages, as above stated, the arrival of the goods in New York at the time mentioned, the tender, and the refusal of the defendants to accept. The court thereupon ruled that, before the plaintiff could recover, it must go further, and prove that the shipment was made within a reasonable time. To this ruling the plaintiff excepted, and that exception gives rise to the first question to be considered on this appeal.

No time for performance of this contract having been agreed upon between the parties, the law incorporates in it the term that it shall be performed within a reasonable time (Benj. Sales, § 683, and cases cited), and compliance with that term thus incorporated in the contract must be shown. If a specific time had been fixed by the parties, performance at or within that time would have to be proven. Bowes v. Shand, 2 App. Cas. 455; Ledon v. Havemeyer, 121 N. Y. 179, 24 N. E. 297. The same rule applies to performance within a reasonable time. It was held in Pope v. Manufacturing Co., 107 N. Y. 61, 13 N. E. 592, that where there is an executory contract for the sale and delivery of merchandise, and no time is set for such delivery, the legal effect is to require the delivery to be made within a reasonable time; and, where suit is brought by the seller against the purchaser for the failure of the latter to take and pay for the goods, the plaintiff must allege in his complaint and prove upon the trial performance or offer to perform on his part within that reasonable time. Such proof is not made when only the dates at which the specific acts were done are given in evidence. The question of reasonable time becomes one of fact under the special circumstances of each case. Where the contract expresses the time, the question of construction is for the court; but, where it is left open, what is a reasonable time depends entirely upon the circumstances of each particular case, and is for the jury. Davis v. Talcott, 14 Barb. 611, 612; Ellis v. Thompson, 3 Mees. & W. 445; Stewart v. Marrel, 101 N. Y. 357, 4 N. E. 743. It became part of the plaintiff's case, there-

fore, to show what the facts and circumstances and conditions were, in order that the jury might determine whether or not the shipment in this case was made within a reasonable time. The form in which the complaint was drawn could not affect the question. The obligation was upon the plaintiff to show performance, and, although the defendants set up the want of performance within a reasonable time, that did not shift the burden of proof. The plaintiff's case then proceeded under the ruling, and it attempted to make the required proof. The defendants in turn gave evidence on the same subject. With reference to the issue of fact concerning the time at which shipment could have been made there was very conflicting evidence. That evidence should be looked at, undoubtedly, in the light of what is disclosed by the proof respecting the ability of the plaintiff to perform the contract, under conditions, some of which, at least, were known to the defendants; and we have examined it closely to ascertain whether the verdict is clearly against the evidence. It seems to be conceded that the order given on the 8th of February, 1893, could not have reached Sumatra until the latter part of March. The defendants were not altogether ignorant of the conditions existing at Padang with reference to the procurement of transportation. There were difficulties, and it was known that such transportation could not be procured at once. The plaintiff was, nevertheless, bound to use diligence, and the evidence introduced by it tends to show that some efforts were made to ship the whole 1,000 piculs in one shipment. We do not think this is a case in which it can properly be said that the plaintiff, when the contract was made, is to be presumed to have made it, having then available means of transportation. The whole evidence shows that it was very difficult to charter vessels at Padang to bring a part of a cargo of merchandise to New York; nevertheless the duty and obligation were imposed upon the plaintiff to do everything it could to perform its contract as soon as might be. The time within which that could be done is the subject of testimony based upon facts, and not merely upon opinions of merchants or others engaged in the importation of coffee from Sumatra. The question of fact was, what, within the experience and knowledge of witnesses, was a reasonable time for the procurement of transportation for these goods? There is a wide difference in the testimony upon that subject. Some witnesses state that from 30 to 90 days after the receipt of the order at Padang would suffice, and others between 4 months and 1 year. The testimony upon the subject is unsatisfactory in some respects, but there is a circumstance in proof which the jury doubtless considered, and which is a very important one. According to the testimony of the plaintiff's agent at Padang, there were only four sailing vessels that came to that port, bound for New York, between the time the order in this case was received and the time the goods were shipped. That agent testifies that he endeavored to get transportation for the goods on each of those four ships, but that the charterers would not give it; and yet it is proven by him that a shipment of other coffee to the plaintiff was made by one of those vessels, namely, the Barden, which sailed on the 3d of May, 1893. Several hundred piculs of coffee were ship-

ped on that vessel to the plaintiff. That fact indicates that the plaintiff could have undertaken performance of its contract with the defendants before November, 1893, by shipping some of the goods sold the defendants, instead of the other consignment to the plaintiff. There was nothing in the contract which required the whole 1,000 piculs to be shipped or sent forward at one time, or by any one vessel. On the contrary, shipments by different vessels were contemplated. Express reference is made to the giving of the name of the "vessel or vessels" by which shipments were to be made. On the whole testimony relating to the subject, the trial court was right in leaving it to the jury to determine whether performance was had or entered upon within a reasonable time; and in the state of the proof we do not feel authorized to interfere with the verdict of the jury. It was for them to say, under all the circumstances of the case, including the ability of the plaintiff to perform, whether the shipment was made within a reasonable time.

But there was proof to sustain the other defense, namely, that of the modification of the terms of the contract. In March, 1893, the plaintiff, through Lewis, the broker, made application to the defendants for a change in the terms of the contract. It desired to ship the coffee by steamer from Padang to Singapore, and have it come forward from the latter port, by sailing vessel, to New York. That change the defendants would not authorize for what appears to be a sufficient reason, viz. that the coffee would deteriorate were that course pursued. Both the defendants testified that during the negotiations respecting this desired change they granted an "extension," as they put it, of the time for shipment, to June 30, 1893. Their testimony is fortified by a letter written by them, which was mailed to the plaintiff, and which they say was shown to Lewis, and in which they gave their assent to such an extension. The president of the plaintiff, Mr. Pupke, testified that he never received the letter, but there is nothing to show that other of the plaintiff's officers or agents did not receive it. Mr. Lewis, the broker, does not deny that such an arrangement was made by him with the defendants. He only says that he has no recollection of any such extension having been given, or the letter having been shown him. There is no direct contradiction of the defendants' statement in this regard. But it is claimed that the broker had no authority whatever to ask for an extension of time, or to make any arrangement whatever respecting the date at which the goods should come forward, and that his authority was limited to negotiating for the one particular desired change. There is no evidence of any express authority given by the plaintiff to the broker to make this change in the contract by fixing the ultimate date for shipment, but it is sworn to distinctly by the president of the plaintiff corporation that at the very time at which this alleged arrangement was made Mr. Lewis was still acting as the broker of the plaintiff. There is no doubt that he was sent to the defendants to make some modification of the contract, nor that he was acting as the plaintiff's broker at that time, nor that the subject of the negotiation or treaty then between them related to the element of time in the performance of the contract. We think there was

enough to show authority on the part of the broker, and that there was sufficient to go to the jury on the subject of the 30th of June being fixed as the date at which performance of the contract should be had by making the shipment; and, the jury having found in favor of the defendants on that subject, we cannot interfere with the verdict.

It is further claimed on the part of the plaintiff that the evidence discloses circumstances amounting to a waiver on the part of the defendants of performance of this contract, even assuming that June 30, 1893, was fixed as the date at which the merchandise should be shipped from Padang. The proof does not establish that delay was waived. The name of the vessel was communicated about August 16, 1893, and it is claimed that, because no response was made by the defendants to that letter, they waived their rights. But a waiver cannot be implied from that circumstance alone. When the marks and numbers were sent to them on December 27, 1893, they repudiated the contract for delay. They were not bound to take a stand on receipt of the August notice. They could rely then upon the fact that the extension of time agreed to by them had expired; but when the plaintiff evinced, in December, the purpose of still holding the defendants to the contract, then they spoke, and, as we think, spoke in time.

During the progress of the trial, and as affecting the question of reasonable time, a letter, written by the president of the plaintiff was received in evidence under the defendants' objection and exception, in which letter is a strong acknowledgment that the plaintiff was in default in performing its contract. That was a letter written by the president, Mr. Pupke, to Pierson, the plaintiff's agent in Sumatra, and is dated July 10, 1893. The statement is made therein that the delay was altogether unreasonable. As Mr. Pupke was an officer of the plaintiff, having the charge of the transaction in New York on its behalf, his declaration to its own agent was not incompetent as testimony binding the plaintiff. The objection that the letter was written in ignorance of the difficulties the agent in Padang was under respecting the procurement of a ship does not relate to the competency as evidence, but only to the effect to be given to the declaration of Mr. Pupke, made in the actual course of the business to which it related. Therefore we think that the letter was not improperly admitted. There are no other questions in the case which require special consideration.

The judgment and order appealed from should be affirmed, with costs. All concur, except VAN BRUNT, P. J., dissenting.

VAN BRUNT, P. J. I cannot concur with the prevailing opinion. I think that the contract called for the shipment of the coffee by a single sailing vessel, and that it was not in the contemplation of the parties that it should be shipped in lots upon different vessels. Such construction is certainly as much in harmony with the language of the contract as the one adopted by the court, and is decidedly more consistent with the action of the parties.